# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Cornell Vinegar (A-70723), ) | |
| ) | |
| Plaintiff, ) | |
| ) | 15 C 5684 |
| v. ) | |
| ) | Judge Charles P. Kocoras |
| Phillip Martin, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cornell Vinegar ("Vinegar"), now a prisoner at Graham Correctional Center, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that while he was incarcerated at the Northern Reception and Classification Center at Stateville Correctional Center ("Stateville NRC"), Lt. Phillip Martin ("Lt. Martin") used excessive force against him, and Lt. Cletus Shaw ("Lt. Shaw") failed to intervene to prevent that use of force. Now before the Court is Defendants' motion for summary judgment (Dkt. No. 54), Vinegar's motion to strike exhibits and testimony attached to Defendants' motion for summary judgment (Dkt. No. 59), and Vinegar's motion for attorney representation (Dkt. No. 77). For the reasons stated, Defendants' motion for summary judgment (Dkt. No. 54) is granted as to Vinegar's claim for injunctive relief, and is denied in all other respects. Vinegar's motion to strike (Dkt. No. 59) is denied. Vinegar's motion for attorney representation (Dkt. No. 77) is granted, and counsel will be recruited by separate order.

**BACKGROUND**

I. **Factual Background**

The following facts are taken from the parties' N.D. Ill. Local Rule 56.1 Statements of Material Facts ("SOF").[1] Vinegar filed the complaint in this case over an incident that allegedly occurred while he was incarcerated at Stateville NRC in October 2014. (Defs.' Stmt. (Dkt. No. 56) at ¶¶ 1, 7; Pl.'s Resp. (Dkt. No. 60) at ¶¶ 1, 7.) Vinegar testified that on October 1, 2014, at around 3:30 to 4:00 p.m., he was housed in a bullpen with about 50 other inmates when someone yelled something offensive at one of the lieutenants. (*Id.* at ¶ 8.) Defendants Lt. Martin and Lt. Shaw turned around, walked toward the bullpen, and entered. (*Id.* at ¶ 9.)

At that point, according to Vinegar, Lt. Martin kicked him in the right thigh. (*Id.* at ¶ 10.) The encounter was brief, lasting about 20 seconds, and then Defendants took Vinegar to a smaller cell. (*Id.*) Lt. Shaw did not touch Vinegar during the encounter, but walked behind Lt. Martin as Vinegar was transported to the smaller holding cell. (*Id.* at ¶¶ 11, 17.) Lt. Shaw stood outside the smaller cell while Lt. Martin struck Vinegar in the face and kicked him in the left side of Vinegar's ribs.

---

[1] Because Plaintiff is proceeding *pro se*, Defendant served him with a Local Rule 56.2 "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by Northern District of Illinois Local Rule 56.2. (Dkt. No. 57.) Defendant submitted a Statement of Material Facts in accordance with Local Rule 56.1. (Dkt. No. 56.) Plaintiff responded to that filing and submitted his own Statement of Additional Material Facts, to which Defendants responded. (*See* Dkts. No. 60, 75.) Courts may decide a summary judgment motion based on the record established by the parties' 56.1 statements. *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004). To the extent that a party failed to respond adequately to a properly submitted statement of fact, the Court may consider the statement admitted. *See* N.D. Ill. Local Rule 56.1(a), (b)(3)(C); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012).

(*Id.* at ¶¶ 12, 17.) After a brief encounter that lasted 10 to 15 seconds, Lt. Shaw instructed Lt. Martin to stop, and they closed the cell door and walked away. (*Id.* at ¶¶ 13, 14.) Vinegar suffered a bruise on his left thigh and a small contusion on the left side of his ribs as a result of the incident. (*Id.* at ¶ 15.) Vinegar is unaware of any witnesses who saw what happened between him and Defendants. (*Id.* at ¶ 16.)

Vinegar seeks to recover from Lt. Martin for excessive use of force and against Lt. Shaw for failing to intervene to prevent that use of force. (*Id.* at ¶¶ 18, 19.) Vinegar seeks injunctive relief, compensatory damages, and punitive damages. (*Id.* at ¶ 20.)

In challenging Vinegar's version of events, Defendants present declarations from themselves and Elizabeth Mullin ("Mullin"), an account technician at Stateville Correctional Center. Mullin's job responsibilities include managing, maintaining, and inputting entries into the timesheets of Illinois Department of Corrections ("IDOC") employees at Stateville. (*Id.* at ¶¶ 21-22.) Mullin states that Lt. Martin's 2014 timesheet is an official business record of the IDOC, which was kept and maintained in the ordinary course of business. (*Id.* at ¶¶ 23-24.) Entries in the timesheet are updated daily by account technicians. (*Id.* at ¶ 25.) Entries – including those on Lt. Martin's timesheet – are made at or near the time the employee's request for time off is approved by the Overtime Equalization Office at Stateville. (*Id.* at ¶¶ 26-27.) Based on Mullin's review of Lt. Martin's timesheet, she avers that on October 1,

2014, Lt. Martin was not present at Stateville during his regular shift, as he took a vacation day. (*Id.* at ¶ 29.)

Lt. Martin's declaration[2] states that he is a correctional lieutenant at Stateville NRC, in Crest Hill, Illinois. (*See* Dkt. No. 67-1, at ¶ 1.). Lt. Martin stated that he has no independent recollection of Vinegar. (*Id.* at ¶ 2.) However, after reviewing the allegations of Vinegar's amended complaint, Lt. Martin stated, "at no time did I ever assault, use excessive force, or attack Inmate Vinegar." (*Id.*) Lt. Martin further stated that he was generally assigned to work the 3:00 p.m. to 11:00 p.m. shift at the NRC in October 2014. (*Id.* at ¶ 3.) But on October 1, 2014, he "was on vacation and not at Stateville or the NRC." (*Id.*) Lt. Shaw, who is now retired from the IDOC, also has no independent recollection of Vinegar. (*See* Dkt. No. 56-5, at ¶¶ 1-2.) On October 1, 2014, he was assigned to the 3:00 p.m. to 11:00 p.m. shift at the NRC. (*Id.* at ¶ 2.) Lt. Shaw also reviewed the allegations of Vinegar's amended complaint and denied that he "witnessed, failed to intervene, or had any knowledge of Lt. Phillip Martin attacking any inmate." (*Id.*)

Vinegar has submitted his own declaration, which recounts his version of events and states that he read the names on Defendants' name tags during the October 1, 2014, incident. (Dkt. No. 60, pgs. 7-8, at ¶ 4.) Vinegar stated that he knows that Lt. Martin was present at the prison on October 1, 2014, "for the few minutes that I

---

[2] Defendants did not include Lt. Martin's declaration with their original motion for summary judgment, but were given leave to supplement their filing to include the declaration. (*See* Dkt. No. 73.) At that time, Plaintiff was given an opportunity to supplement his response to specifically address the declaration, but he did not do so.

encountered him." (*Id.* at ¶ 9; *see* Pl.'s Resp. at ¶ 36 ("I do not know if Lt. Martin was only at Stateville NRC for a few minutes, possibly picking up his paycheck or something [.] I do know that the interactions that I had with him occurred at 3:30-4:00 p.m. on October 1, 2014. He was in his Lt. uniform and at Stateville during the minutes that he physically assaulted me."). He further stated that after the attack, another correctional officer named Joseph approached the cell and told Vinegar that Lt. Martin "does this quite often." (*Id.* at ¶ 6.)

Vinegar also contends that Lt. Martin's timesheet and Mullin's declaration were not produced to him in discovery, which Defendants admit. (*See* Pl.'s Resp. at ¶¶ 31, 34; Defs.' Reply (Dkt. No. 75), at ¶¶ 1, 4.) Vinegar also takes issue with certain aspects of the timesheet itself, including that it appears to inaccurately indicate that October 1, 2014, was a Sunday, due to what appears to be the initials "SU."[3] (Pl.'s Resp. at ¶¶ 32-33.) Defendants, relying on another declaration from Mullin, state that the initials "SU" are actually "SD," which stands for "shift differential." (Defs.' Reply at ¶ 3.)

## II. Vinegar's Motion to Strike

Vinegar moves to strike Mullin's declaration and Lt. Martin's timesheet on the basis that they were not disclosed pursuant to Fed. R. Civ. P. 26(a)(1)(A). Rule 26(a), which governs required initial disclosures, does not apply to "an action brought without an attorney by a person in the custody of the United States, a state, or a state

---

[3] All parties acknowledge that October 1, 2014, was a Wednesday.

5

subdivision." *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). Cases brought by *pro se* prisoners, then, are exempt from the automatic disclosure requirement. *See Lane v. Corizon Healthcare*, No. 3:13-CV-519 JD, 2013 WL 2566256, at *5 (N.D. Ind. June 11, 2013) (DeGuilio, J.).

The Court did not order initial disclosures in this case, nor did Vinegar submit discovery requests to Defendants. Therefore, Defendants were not under an obligation to disclose Mullin's declaration or the timesheet prior to filing their motion for summary judgment. *See London v. Williams*, No. 07-15631, 2009 WL 567883, at *1 (9th Cir. Mar. 6, 2009) (unpublished) (defendants were not obligated to disclose an expert witness whose declaration the district court relied upon in granting summary judgment because plaintiff was a *pro se* prisoner, and no trial date had been set); *Munoz v. Burson*, No. 2:10-CV-01564-MMD, 2013 WL 149624, at *3 (D. Nev. Jan. 11, 2013) (Du, J.) (denying motion to strike exhibits attached to summary judgment motion in prisoner case because case was exempt from initial disclosure requirement).

Finally, the Court notes that Vinegar has had an opportunity to review the declaration and timesheet, and Vinegar makes several arguments as to why the timesheet is unreliable or does not refute his claims. He has not filed a motion seeking additional discovery to respond to the motion in light of the timesheet. *See* Fed. R. Civ. P. 56(d) (allowing a party to request time to obtain discovery if the party demonstrates that "it cannot present facts essential to justify its opposition"). Vinegar's motion to strike is denied.

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). In ruling on a motion for summary judgment, the Court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court "may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations and quotation marks omitted).

The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that it is entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th

Cir. 2012). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000) ("The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence on which a jury could reasonably find for the plaintiff."). In this regard, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

As to Vinegar's excessive force claim, the intentional use of excessive force by prison guards against an inmate that results in the "unnecessary and wanton infliction of pain" can constitute cruel and unusual punishment in violation of the Eighth Amendment. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

The "'core judicial inquiry'" is not the degree of injury sustained, but rather "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson*, 503 U.S. at 7). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of

8

the injury caused to the prisoner. *Hudson,* 503 U.S. at 7; *Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004). A prison guard may be liable for failure to intervene in the use of excessive force if he has a realistic opportunity to prevent the use of force, but fails to do so. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

Defendants do not argue that Vinegar's version of events, if accepted as true, is insufficient to proceed to trial on these claims. Rather, they rely on the principle set forth in *Scott*, 550 U.S. at 380, and argue that this is a case in which Vinegar's story is so blatantly contradicted by the record that no reasonable jury could believe it. Essentially, they contend that Lt. Martin's timesheet definitively proves that neither Defendant could have been personally involved in the alleged attack on Vinegar.

*Scott* concerned a high-speed police chase that ended with the driver suffering serious injuries after a deputy pushed his vehicle off the road. *Id.* at 374-75. In reviewing the denial of qualified immunity to the deputy in the driver's subsequent lawsuit, the U.S. Supreme Court used a videotape of the chase to determine the relevant facts. *Id.* at 378-82. While the plaintiff driver had taken the position that he posed no threat to pedestrians or other motorists during the chase, the videotape told "quite a different story." *Id.* at 379. It showed the driver's vehicle "racing down narrow, two-lane roads in the dead of night at speeds that [were] shockingly fast, swerving around more than a dozen other cars, and crossing the yellow line." *Id.* Observing that the video depicted a "Hollywood-style car chase of the most frightening sort," the Court found that the driver's version of events was "so utterly

9

discredited by the record that no reasonable jury could have believed him." *Id.* at 380-81. In such circumstances, the Court held that the lower court should have viewed the facts in the light depicted by the videotape. *Id.* at 381.

The rule in *Scott* is generally, although not exclusively, applied in cases involving video evidence. *See Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (summarizing the holding in *Scott* as stating that "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape"); *see also Blackman v. Johnson*, No. 13-cv-470, 2014 WL 6685950, at *5 and n. 2 (N.D. Ill. Nov. 24, 2014) (Coleman, J.) (the court found only one Seventh Circuit case, *Holt v. Ford Motor Co.*, 275 Fed. App'x 553, 554 (7th Cir. 2008) (unpublished), applying the *Scott* rule in the absence of video evidence).

In *Holt*, a plaintiff sued a car dealership for repossessing his vehicle after he defaulted on his purchase contract, arguing that his signature on the contract was forged and that he had actually bought the vehicle under an oral contract with a lower monthly payment. 275 Fed. App'x at 554. Although the plaintiff submitted an affidavit denying that he signed the purchase contract, his claims were internally inconsistent and were belied by other evidence in the record, including the fact that he had paid under the contract for a year and the opinion of a handwriting expert who stated that the signatures on the contract were the plaintiff's. *Id.* In a more recent case, *William Charles Constr. Co., LLC v. Teamsters Local Union 627*, 827 F.3d 672,

678-79 (7th Cir. 2016), the Seventh Circuit held that the district court erred in accepting as true a union's version of events regarding when a contractor received notice of an arbitration award, given that the documentary evidence relied upon by the union – an email indicating that the proposed decision was not final – contradicted the union's position.

While there is nothing in the language of the *Scott* ruling that limits its analysis to claims involving videotaped evidence of the events in question, *see Coble v. City of White House, Tenn.*, 634 F.3d 865, 868-69 (6th Cir. 2011), the moving party must clear a high bar to show that the other party's version of events is so "'*blatantly contradicted*' and '*utterly discredited by the record*' such that '*no reasonable jury*' could believe it." *Blackman*, 2014 WL 6685950, at *6 (quoting *Scott*, 550 U.S. at 380). In *Blackman*, for example, the Court rejected an argument that medical records from an examination the day after an alleged use of excessive force, which showed no acute findings of trauma, so undermined the plaintiff's claims that no reasonable jury could believe them. *Id.*; *see Esparza v. Cantona*, No. 15 C 7307, 2017 WL 3434127, at *4 (N.D. Ill. Aug. 10, 2017) (Valdez, M.J.) (rejecting argument that photographic evidence of plaintiff's alleged injuries merited summary judgment on plaintiff's excessive force claim).

Here, the objective evidence – the timesheet – at best conclusively shows that Lt. Martin was approved for 7.5 hours of vacation pay on October 1, 2014. *See* Mullin Declaration at ¶ 2 (stating that entries in the timesheet "are made at or near the

11

time the employee's request for time off is approved by the Overtime Equalization Office at Stateville"). It is demonstrative of nothing further. As Vinegar observes, the timesheet is difficult to read, given that almost all information except the approved vacation time on October 1, 2014, is blacked out. Vinegar surmises that Lt. Martin may have been called in to work despite having taken a vacation day, or perhaps came into the prison briefly to pick up his paycheck, or for some other reason. These scenarios may be unlikely, but the Court cannot find that the evidence in the record so blatantly contradicts these possibilities that no reasonable jury could believe them. *See Hayes v. New York*, No. 9:10-CV-1201, 2013 WL 5278879, at *9 (N.D.N.Y. Sept. 18, 2013) (Hurd, J.) (denying summary judgment where the defendant presented evidence that she was not on duty at the time of a painful handcuff removal, but the plaintiff testified that he read her name tag during the incident); *Ardds v. Knipp*, No. 2:14-cv-960, 2016 WL 5847013, at *10 (E.D. Cal. Oct. 6, 2016) (Brennan, M.J.) (where the plaintiff's statement that he saw the correctional officer, when weighed against the documentary evidence and the officer's statement that he was not at work that day, "presents a close call for summary judgment," the district court refused to recommend dismissal in the face of the plaintiff's insistence that the officer was present on the date in question).

Vinegar has submitted a declaration affirmatively stating that he read the name tags on the officers during the encounter and that they displayed the names of Lt. Martin and Lt. Shaw. This declaration is consistent with his complaint and deposition

testimony.  Defendants deny this, of course, and the timesheet is evidence in their favor, but the Court cannot determine credibility questions on summary judgment. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  Nor can the Court weigh the evidence or decide what inferences to draw from the facts, even "in cases where the facts and inferences appear to lead more strongly to one conclusion than another." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010). Therefore, Defendants' motion for summary judgment is denied as to the excessive force claim against Lt. Martin.

As to the failure-to-intervene claim against Lt. Shaw, Defendants take the position that this claim necessarily fails in light of the evidence that Lt. Martin was on vacation on October 1, 2014.  Defendants cite *Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005) for the proposition that "by definition, if there was no excessive force then there can be no failure to intervene."  Defendants posit that the timesheet undermines Vinegar's credibility to such an extent that no reasonable jury could believe that a use of improper force occurred at all.  This argument fails for the reasons set forth above.  Additionally, this argument does not negate – or even address – the possibility that Vinegar is mistaken about the identity of his assailant.  Thus, it is possible that Lt. Shaw failed to intervene in the use of excessive force by a different officer.  These are questions a jury must consider.

Defendants are correct that Vinegar's request for injunctive relief is moot. Vinegar seeks injunctive relief directing Defendants "to cease their physical violence

against other inmates at the Stateville NRC facility." However, Vinegar is no longer housed at Stateville NRC. Vinegar may not represent the interests of other prisoners. *See Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008) (explaining that *pro se* litigant may not represent interests of other individuals). To the extent Vinegar had a claim for injunctive relief on his own behalf, that claim is moot in light of his transfer to another facility. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret,* 862 F.2d 148, 150 (7th Cir. 1988)). Allegations of a likely retransfer may not be based on speculation. *Id.*; *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Here, Vinegar presents no argument that he is likely to be transferred back to Stateville NRC, nor does he make any showing that he would likely be subjected to excessive force again if he were to be transferred there. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (exception to mootness doctrine where violation is capable of repetition, but evading review does not apply unless the plaintiff can "make a reasonable showing that he will again be subjected to the alleged illegality"). Therefore, Defendants' motion for summary judgment is granted as to Vinegar's claim for injunctive relief.

Vinegar's motion for attorney representation demonstrates that he has made adequate efforts to obtain counsel on his own. In light of the likely difficulty of

representing himself at trial, the Court grants Vinegar's motion for attorney representation. Counsel will be recruited by a separate order.

## CONCLUSION

For the reasons stated in this opinion, Defendants' motion for summary judgment [54] is granted as to Vinegar's claim for injunctive relief and denied in all other respects. Vinegar's motion to strike exhibits and testimony attached to Defendants' motion for summary judgment [59] is denied. Vinegar's motion for attorney representation [77] is granted, and counsel will be recruited by separate order. It is so ordered.

_____
Charles P. Kocoras
United States District Court Judge

DATE:12/1/17